IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,    )
    )
    Plaintiff,    )
    ) No. 10-1507
v.    )

INGRID N. MCCULLOUGH, et al.,

    Defendants.

**OPINION AND ORDER**

**SYNOPSIS**

This action arises out of an unpaid tax assessment against decedent, prior to her death.

According to the Government, decedent died with an adjudicated tax liability, resulting in a lien

against her real property.   Prior to her death but after the tax lien attached, decedent transferred

the property to her daughter, who then transferred it to herself and her husband.  The couple later

sold the property, and used the proceeds to purchase another.   In this civil action, the

Government seeks to foreclose a tax lien against the Defendants' property, and alleges that the

initial transfer between mother and daughter was fraudulent.

Before the Court is the Government's Motion for Summary Judgment, and Defendants'

opposition thereto.  For the following reasons, the Motion will be granted in part and denied in

part.

**OPINION**

**I.  FACTS[1]**

---

[1] The following summarizes the facts in light of Local Rule 56.1, which requires that a responsive concise statement
of material fact contain appropriate reference to the record, if any fact is not admitted in its entirety.

On March 4, 1996, the Tax Court entered a decision against wife-Defendant's now-deceased mother, Harriet Nixon Hall (referred to herein as "Ms. Hall," "decedent," or "wife-Defendant's mother") and the estate of Ms. Hall's husband, James F. Hall. The decision found that the couple had an income tax deficiency for the tax year 1988, in the amount of $287,624.41; notice and demand for payment of this amount, plus interest of $258,170.52, were sent accordingly May 2, 1996.[2] Neither Ms. Hall nor the estate paid the tax liabilities.

At the time, Ms. Hall resided at property located on Kings Highway in Carnegie, Pennsylvania, which the Halls had acquired in or about 1965. Following her husband's death, Ms. Hall became the sole owner of the property. By deed dated July 31, 2001, Ms. Hall transferred title to the property to her daughter, the present Defendant, in exchange for $1.00 and "natural love and affection." Wife-Defendant asserts that she also promised her mother that she would repair and rehabilitate the property, and take care of her ill mother. Ms. Hall continued to reside at the property. In 2001, the County assessed the property at $195,000.00, and in 2002, at $239,500.00. On December 10, 2001, a notice of tax lien was filed with the Prothonotary of Allegheny County. In addition, on April 4, 2006, in what we shall refer to as McCullough I, the Government filed suit against Ms. Hall and her husband's estate in order to reduce the tax assessments to judgment.

On April 17, 2002, wife-Defendant encumbered the property with a mortgage for $82,000.[3] She testified that a part of the proceeds were used to make repairs to the property, and a part of the proceeds were used to finance her son's education. On October 23, 2004, she was

---

[2] Defendants contend that when she transferred the home to wife-Defendant, Ms. Hall was indebted solely in her capacity as executor for her husband's estate. The Court's Opinion in McCullough I, however, makes clear that both Ms. Hall and the estate were jointly liable for the tax deficiency.

[3] Defendants assert that the fact that they were able to mortgage the property demonstrates that it was not subject to a tax lien, because the bank would not have granted a mortgage on a lien-encumbered property. This speculation, however, does not provide a sufficient basis to challenge the validity of the lien.

married; her husband is presently a co-Defendant to this action. By deed dated March 30, 2005, on April 4, 2005, wife-Defendant transferred the Kings Highway property to herself and her husband for $1.00. On or about August 22, 2005, Defendants mortgaged the Kings Highway property for $90,000. The loan proceeds were used to pay off the 2002 mortgage, and for other purposes. On November 5, 2005, Ms. Hall died. The notice of tax lien was was refiled on February 1, 2006. On June 30, 2006, wife-Defendant was appointed as executrix of her mother's estate. Between approximately 1995 and 2008, wife-Defendant was engaged in a business of reselling industrial lubricants, and also worked at a day care center.

In McCullough I, the Government filed an amended complaint on July 7, 2006, naming wife-Defendant as a party Defendant, in her capacity as executrix of her mother's estate. On November 6, 2006, judgment was entered in McCullough I against wife-Defendant, as executrix of her mother's estate, in the amount of $1,211,338.05.00 plus interest. By letter dated May 4, 2007, the Government demanded payment from wife-Defendant, from the funds and assets of her mother's estate. Subsequently, on July 30, 2009, Defendants sold the Kings Highway property for $375,000, and used the proceeds to pay the balance of the 2005 mortgage, and to purchase property on Winthrop Road in Carnegie, Pennsylvania, for $215,000.

In the present Complaint, the Government seeks, inter alia, a declaratory judgment that the federal tax lien attached to the Kings Highway property on May 2, 1996, and remained attached thereto through the July, 2001 and March, 2005 transfers; and that the lien attached to the proceeds from the sale of the property, and thus to the Defendants' Winthrop Road property. The Government also alleges that the July, 2001 transfer of the Kings Highway property from wife-Defendant's mother to wife-Defendant was fraudulent, and thus should be set aside as to the Government, and because the property was sold, wife-Defendant should be liable.

3

## II. APPLICABLE STANDARDS

Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court must examine the facts in a light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chem . Co., 898 F. 2d 946, 949 (3d Cir. 1990). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. United States v. Omnicare Inc., 382 F. 3d 432 (3d Cir. 2004). Rule 56, however, mandates the entry of judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

## III. DISCUSSION

### A. Count I - Lien Tracing - 26 U.S.C. § 6323

First, the Government seeks judgment as a matter of law regarding its right to foreclose on the Winthrop Road property, based on lien tracing principles. There is no dispute that notice of the assessment and demand for payment was made on May 2, 1996. Defendants contend that they are protected by the provisions of 26 U.S.C.§ 6323, which protects certain purchasers of property that is subject to an as-yet unfiled lien. In that vein, Defendants assert that wife-Defendant qualifies as a protected "purchaser"; the Government contends to the contrary.

"Federal tax liens arise automatically on the date of the assessment. Once Federal tax liens arise, they "attach to all property and rights to property, whether real or personal" belonging

4

to the taxpayer, and follow the property through subsequent transfers until satisfied or barred by the statute of limitations." United States v. Stuler, 8-273, 2010 U.S. Dist. LEXIS 5840, at *9 (W.D. Pa. Jan. 26, 2010); 26 U.S.C. § 6322.[4] The relative priority of a federal tax lien is governed by federal law. United States v. Equitable Life Assurance Soc'y, 384 U.S. 323, 328, 330, 16 L. Ed. 2d 593, 86 S. Ct. 1561 (1966). Generally speaking, contrary to Defendants' suggestion, a federal tax lien needn't be filed in order to gain priority over other interests. United States v. R&E Corp., 98-1068, 1999 U.S. Dist. LEXIS 13317, at *11 (E.D. Pa. Aug. 31, 1999).

If a taxpayer transfers lien-encumbered property to a "purchaser" before the government records the lien, however, then the lien no longer attaches to the property and the "purchaser" takes the property free of the lien. 26 U.S.C. § 6323(a). A "purchaser" is defined as "a person who, for adequate and full consideration in money or money's worth, acquires an interest (other than a lien or security interest) in property which is valid under local law against subsequent purchasers without actual notice." 26 U.S.C. § 6323(h)(6). A party seeking the protection of Section 6232 bears the burden of proving his entitlement to the protection of that Section. Resolution Trust Corp. v. Gill, 960 F.2d 336, 344 (3d Cir. 1992).

Further, applicable regulations define "adequate and full consideration in money or money's worth" as "a consideration … having a reasonable relationship to the true value of the interest in property acquired … Adequate and full consideration in money or money's worth may include the consideration in a bona fide bargain purchase." 26 C.F.R. § 301.6323(h)-1(f)(3)

---

[4] To perfect a lien against real property, a notice of federal tax lien must be filed in the real property records of the county where the property is located. 26 U.S.C. § 6323(f)(1)(A)(I) and (2)(A). "That the Government might not file notice [pursuant to 26 U.S.C. § 6323] until some future date, if at all, does not affect the immediate attachment of a tax lien when liability is admitted or assessed." Sgro v. United States, 609 F.2d 1259, 1261 (7th Cir. 1979). In this case, the notice of tax lien was filed subsequent to the July 31, 2001 transfer.

(1997). Further, "money or money's worth" is defined as "tangible or intangible property, services and other consideration reducible to a money value," not including such things as "love and affection . . . or any other consideration not reducible to a money value." United States v. Morrell, 137 F. Supp. 2d 130, 136 (E.D.N.Y. 2001) (citing 26 C.F.R. 301.6323(h)-1(a)(3)). This requirement of adequate and full consideration must be strictly applied. United States v. Paladin, 539 F. Supp. 100, 103 (W.D.N.Y. 1982).

There is no question that $1.00 alone is insufficient consideration, in this context. In support of their argument that wife-Defendant was a "purchaser" of the Kings Highway property, however, Defendants point to her promise to care for her mother, and to repair and rehabilitate the property, as well as her payment of $1.00.[5] They point to similar promises in support of their contention that the later transfer to husband-Defendant is protected.[6] Defendants, however, have not proffered sufficient grounds for finding that these promises constitute "adequate and full consideration" for the property. Even disregarding potential hearsay complications, and accepting the truth of Defendants' submissions, the consideration is not sufficient under Section 6323 or summary judgment standards.

In the first instance, "[a] promise of future support, particularly to maintain the home of one's parents, is 'insufficient as a matter of law to be considered a fair equivalent of the property transferred.'" United States v. Gallina, No. 97-5532, 2010 U.S. Dist. LEXIS 142055, at *24 (E.D.N.Y. 2010); see also United States v. Sweeny, 418 F. Supp. 2d 492, 497-98 (S.D.N.Y.

---

[5]Both the July and March deeds at issue identify consideration as $1.00 and natural love and affection. The now-identified oral promises do not appear on the deed, causing potential complications in light of Pennsylvania's Statute of Frauds. An oral modification to a written agreement falls within the statute, and an alleged "oral contract cannot be inferred only from the declarations of one of the parties [because] to hold otherwise is tantamount to setting aside the Statute of Frauds." Mill Run Assocs. v. Locke Prop. Co., No. 2-8042, 2003 U.S. Dist. LEXIS 18096, at **13-14, 19-20 (E.D. Pa. Sept. 22, 2003).

[6] It appears as though the lien is effective against husband-Defendant whether or not he was a "purchaser" under Section 6323, because the Government filed notice of the lien prior to the March 30, 2005 transfer that gave rise to his interest in the Kings Highway property. See, e.g., Moco Investments, Inc. v. U.S., 362 Fed. Appx. 305 (3d Cir. 2010).

2006).  Wife-Defendant testified that she cared for her mother, but proffers absolutely no

evidence of what that "care" constituted, and thus no evidentiary basis for concluding that her

conduct is reducible to a money value, or for appraising that money value.  The record is devoid

of facts that would permit the conclusion that the promised services and repairs, or the services

and repairs actually rendered, bridge the large gap between $1.00 and the property's assessed

value, so as to allow the conclusion that they are reasonably related in amount.[7] .   Indeed, there

is no basis for determining whether wife-Defendant's caretaking was something other than love

and affection, which, while morally and otherwise laudable, is inadequate in the present tax

context.   Defendants bear the burden on this issue, and their submissions are not sufficient to

preclude the entry of judgment against them under Fed. R. Civ. P. 56 and Section 6323.

Accordingly, I am constrained to find that Defendants have not established that they were

"purchasers," such that they are entitled to the protections of Section 6323 as regards the July 31,

2001 and March 30, 2005 transfers.   As Defendants' sole substantive challenge to the lien

tracing claim rested on that Section,[8] the Government is entitled to judgment as a matter of law

on Count I of the Complaint, asserting the right to lien foreclosure on the Winthrop Road

property.

---

[7] Defendants argue that whether the services and repair constitute "adequate consideration" is a question of fact.
They cite to United States v. Rocky Mt. Holdings, Inc., No. 8-3381, 2009 U.S. Dist. LEXIS 52203 (E.D. Pa. Mar. 4,
2009).  That case arose on a motion to dismiss, rather than on summary judgment, and does not deal with the issue
of proper consideration under Section 6323.
[8] The Government premises its theory on the principle that a tax "lien follows any property substituted for what the
taxpayer owned, provided the chain of substitution can be traced." Municipal Trust & Sav. Bank v. United States,
114 F. 3d 99, 101 (7th Cir. 1997); see also United States v. Callahan, 442 B.R. 1, 7 (D. Mass. 2010).  Defendants do
not contest the viability of this principle, or that the chain of substitution leads to the Winthrop Road property.  I do
note that it is undisputed that that the remainder of that chain leads to funds repaid to a bank to fulfill a mortgage on
the Kings Highway property, which was taken after the tax lien was filed with Allegheny County.   No bank is a
party to this action, and there is no suggestion that the Government has pursued funds from a bank; instead, the
Government seeks to recover any shortfall from the Defendants individually.

**B. Counts II and III - Fraudulent Transfer**

Next, I address whether the Government is entitled to set aside the July 31, 2001 and March 30, 2005 transfers pursuant to Pennsylvania's Uniform Fraudulent Transfer Act ("PUFTA"), 12 Pa.C.S.A. § 5101 et seq., either as actually or constructively fraudulent.[9]

**1. Actual Fraud**

Pursuant to PUFTA, a "transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: …with actual intent to hinder, delay, or defraud any creditor of the debtor."  12 Pa. C.S.A. § 5104.   Factors to consider when assessing actual intent under this Section include whether the transfer or obligation was to an insider; whether the debtor retained possession or control of the property transferred after the transfer; whether the transfer or obligation was disclosed or concealed; whether before the transfer was made or obligation was incurred, the debtor was sued or threatened with suit; whether the transfer was of substantially all the debtor's assets; whether the debtor absconded; whether the debtor removed or concealed assets; whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred; whether the debtor was insolvent or became insolvent shortly after the transfer; and whether the transfer occurred shortly after or before a substantial debt was incurred. Id. at § 5104(b).[10]   The plaintiff bears the burden of proving actual intent under the statute.  Shubert v.

---

[9] Defendants assert several defenses to this action.  First, they assert the four-year statute of limitations applicable under the PUFTA, and the defense of laches.  The United States, however, is not bound by state statutes of limitations in fraudulent conveyance actions, and is not subject to the defense of laches. United States v. Evans, 340 Fed. Appx. 990 (5th Cir. Tex. 2009) (citing United States v. Summerlin, 310 U.S. 414, 416, 84 L. Ed. 1283, 60 S. Ct. 1019 (1940)).

[10] Comment (5) to Section 5104(b) states that evidence of one or more of the enumerated factors "does not create a presumption that the debtor has made a fraudulent transfer."

<u>Dawley</u>, No. 1-32215, 2005 Bankr. LEXIS 1593, at \*24 (Bankr. E.D. Pa. Aug. 10, 2005).

Additionally,

> PUFTA is silent as to the burden of proof to be applied to PUFTA claims, and Pennsylvania courts have not addressed the level of proof required in PUFTA fraudulent transfer actions. …There is some authority, however, which suggests clear and convincing evidence is the appropriate standard for actual fraudulent transfer claims under PUFTA.

<u>Klein v. Weidner</u>, No. 8-739, 2010 U.S. Dist. LEXIS 14230, at \*14 (E.D. Pa. Feb. 17, 2010) (citations omitted).

I am mindful, too, that "issues involving state of mind, including fraudulent intent …are factually intensive, require credibility determinations within the province of a jury and are generally not determined at the summary judgment stage." <u>Pittsburgh Home & Garden Show, Inc. v. Scripps Networks, Inc.</u>, No. 3-1477, 2008 U.S. Dist. LEXIS 21020, at \*\*8-9 (W.D. Pa. Mar. 17, 2008). "[A]t the summary judgment stage, the court is not entitled to weigh the evidence." <u>Berrier v. Simplicity Mfg</u>., 563 F.3d 38, 64 (3d Cir. Pa. 2009).

Here, there is a genuine issue of material fact regarding whether wife-Defendant, or her mother, acted with the "actual intent to hinder, delay, or defraud" the Government.[11] Wife-Defendant testified that she believed that her father had "taken care of" the tax liability, and we are without the benefit of her mother's testimony. While several of the factors weigh in favor of a finding of intent, several do not. For example, the July 3, 2001 transfer was not concealed; while it may not have been disclosed to decedent's lawyer, the deed was publicly recorded with the Prothonotary of Allegheny County the day after the transfer. Additionally, the transfer did

---

[11] "The fact that a transfer has been made to a relative . . . has not been regarded as a badge of fraud sufficient to warrant avoidance when unaccompanied by any other evidence of fraud. The courts have uniformly recognized, however, that a transfer to a closely related person warrants close scrutiny of the other circumstances, including the nature and extent of the consideration exchanged." <u>Dawley</u>, 2005 Bankr. LEXIS 1593 at \*26.

not occur shortly after the debt was incurred. Instead, the tax lien arose, and notice and demand for payment were sent, in 1996. It is not established that the transfer involved substantially all of the decedent's assets; instead, she owned other property in Collier Township. The decedent's family believed that in 2002, she had an interest in that property amounting to $304,150.00. The debtor did not abscond at any time prior to her death; instead, she remained at the Kings Highway property. It is unclear to what degree the debtor retained "control" over the property following the transfer. Under applicable standards and principles, I cannot find that the Government has met its burden at this juncture. Thus, the Motion is denied to that extent.[12]

### 2. Constructive Fraud

The Government also contends that the transfers at issue are avoidable as constructively fraudulent. Pursuant to 12 Pa.C.S. § 5104(a)(2), a transfer is fraudulent when the debtor makes the transfer "without receiving a reasonably equivalent value in exchange for the transfer or obligation," and the debtor was engaged or about the engage in a transaction for which the debtor's assets were unreasonably small, or intended to or reasonably believed he would incur debts beyond his ability to pay as they become due. Pursuant to 12 Pa.C.S.A § 1505, a transfer may be fraudulent is the debtor did not receive "reasonably equivalent value," and the debtor was insolvent at the time of the transfer, or became insolvent as a result. "Courts have consistently applied a preponderance of the evidence standard to constructive fraudulent transfer claims under PUFTA." Weidner, 2010 U.S. Dist. LEXIS 14230 at *14. The burden of proof regarding all elements of such claims is on the party challenging the transfer. Classman v. O'Brian, 435 B.R. 276, 287-88 (Bankr. E.D. Pa. 2010); Fidelity Bond & Mortg. v. Brand, 371 B.R. 708, 720 (E.D. Pa. 2007).

---

[12] The Government points to United States v. Green, 201 F. 3d 251 (3d Cir. 2000), and similar cases, which apply a presumption of fraud to interspousal transfers, not inter-family transfers generally.

Whether reasonably equivalent value was exchanged is an inherently factual issue to be determined on a case-by-case basis. Hemstreet v. Brostmeyer, 258 B.R. 134, 138 (Bankr. W.D. Pa. 2001). "Consideration adequate to preclude a constructive fraudulent conveyance may be manifested in many different forms." Gardner v. Tyson, 218 B.R. 338, 348 (Bankr. E.D. Pa. 1998). Relevant factors utilized in evaluating reasonable equivalence include: whether the value of what was transferred was equal to the value of what was received; the fair market value of what was transferred and received; whether the transaction took place at arm's length; and the good faith of the transferee. Castle Cheese, Inc. v. MS Produce, Inc., No. 4-878, 2008 U.S. Dist. LEXIS 71053, at *78 (W.D. Pa. Sept. 19, 2008).

In this case, the Government has failed to meet applicable standards. Just as the lack of record evidence resulted in a finding that Defendants failed to meet their burden under federal law, above, the same is true where the burden rests on the Government. The absence of evidence regarding the transferor's assets does not conclusively establish her insolvency; the Government has not proffered sufficient evidence of decedent's financial condition at all pertinent times. Similarly, the absence of evidence regarding wife-Defendant's services to her mother does not conclusively establish the lack of reasonable equivalence. Finally, as discussed above, there are outstanding credibility issues regarding wife-Defendant's good faith. For these reasons, applicable standards mandate that I deny the Government's Motion to that extent.

I take separate note of the Government's Motion as it relates to the wife-Defendant's March 30, 2005 transfer of the Kings Road property to herself and husband-Defendant. Pennsylvania's fraudulent transfer law applies to transfers made by a "debtor"; it also defines "debtor" as "a person who is liable on a claim." 12 Pa.C.S. § 5101(b). In this case, there is no contention that wife-Defendant acted other than individually when she transferred the Kings

11

Road property to herself and her husband. There is no suggestion that she was personally liable for the Government's claim against her parents' estates. In other words, the Government has not argued that she was a "debtor," as she was not individually liable on a claim. "In order to establish liability under the PUFTA, a plaintiff must establish that the "person" who made the transfer in question was a "debtor" within the meaning of the statutory definition." <u>Castle Cheese</u>, 2008 U.S. Dist. LEXIS 71053, at *68. The Government does not address this issue, and I decline to reach any conclusion thereon without illumination of the parties' positions.

Finally, because I will deny the Government's Motion for judgment pursuant to PUFTA, I must reach a similar conclusion regarding their asserted remedies for fraudulent transferee liability under 12 Pa.C.S.A §§ 5107 and 5108.[13] Entitlement to remedies under those Sections depends on a fraudulent transfer. Accordingly, the Motion will be denied to that extent.

### C. Counts IV and V - Lien Conversion

Finally, the Government seeks to hold wife-Defendant liable for her conduct in encumbering and selling the Kings Highway property following the July 31, 2005 transfer. Essentially, the Government seeks to recover the $375,000.00 value of the Kings Highway property, because the Winthrop Road property is of lesser value. The Government, however, has not proffered facts or case law that persuades me that Defendants should be held individually responsible for decedent's tax liability based on conversion principles. It has not identified the parameters of the tort in Pennsylvania, nor established its applicability in the present context. I decline to issue a summary finding of liability on such scant grounds, even absent substantive opposition from Defendants. Therefore, summary judgment will be denied to that extent.

---

[13] Moreover, the Government relies on <u>United States v. Verduchi</u>, 434 F. 3d 17 (1st Cir. 2006). That case dealt with Rhode Island's fraudulent transfer statute, which differs from that of Pennsylvania.

**CONCLUSION**

In sum, I am without authority to undermine or avoid the operation of tax laws and principles, as interpreted by federal appellate courts.   As Defendants have not demonstrated that they qualify as protected purchasers of the lien-encumbered property, the Government is entitled to follow the proceeds from the sale of the lien-encumbered property and proceed against the Winthrop Road property.   I do, however, find that the Government is not entitled to judgment in their favor, on this record and on these briefs, on its remaining claims.[14]

An appropriate Order follows.

---

[14] I do not reach the "defenses" raised regarding amount of liability, because it would be a waste of resources at this time.  The tax court's judgment exceeds a million dollars, and the Government contends that the Winthrop Road property is worth approximately $200,000.00.  Because of this differential, any alleged reduction in liability would not affect the Government's right to collect the full proceeds of the sale of the Winthrop Road property.

## ORDER

AND NOW, this 6th day of October, 2011, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion for Summary Judgment (Docket No. 17) is GRANTED in part and DENIED in part. The Motion is granted as to Count I of the Complaint, and denied in all other respects.

Accordingly, the federal tax lien that arose on May 2, 1996 in connection with the assessed federal income tax liability of Harriet Nixon Hall attached to and is foreclosed upon the real property located at 2 Winthrop Road, Carnegie, Pennsylvania, also known as parcel or Block and lot number 105-K-88 on the land records of Allegheny County, PA, since that property is substituted for the prior real property that had been attached by the federal tax lien, 200 Kings Highway, Carnegie, PA that was sold in July 2009, and that the 2 Winthrop Road property be sold. The United States is directed to submit a proposed post-judgment order of sale to the Court within thirty (30) days from the entry of this Order.

A pretrial settlement conference on Plaintiff's remaining claims will be held on October 20, 2011 at 11:30 A.M.

/s/Donetta W. Ambrose

Donetta W. Ambrose

Senior Judge, U.S. District Court